Our last case today is number 2010779 Don't Look Media LLC versus Fly Victor Limited. We have Mr. Farrow for the appellant. Mr. Farrow, you may begin. Thank you, Your Honor. J. Farrow, on behalf of the appellant Don't Look Media LLC, I'm going to advise the court that I'm also sitting next to my other counsel in this case, working for my firm, Mira Kuti. And may it please the court. Your Honor, this appeal emanates out of a February 5th order of 2020, granting an omnibus motion to dismiss based upon two rulings. One is personal jurisdiction, and the other one is the enforcement of a forum selection clause. And I will address each in turn. Your Honor, part of the case in count one was alleged as a civil racketeering case under 18 U.S.C. 1962. And as such, we assert that it allows for nationwide service of process under 1965 D. The analysis of going through this now, we need to whether or not the appellant asserted a colorable claim, meaning that a claim that's not so insubstantial or immaterial or foreclosed by prior decisions of this court, or otherwise so devoid of merit as such not to create a federal controversy. This is Judge Newsome. I just do a quick question. Get into the colorable nest, if that's a word of the claim. I mean, under the language of 1965 D, I mean, I have two questions for you. One, 1965 D, other process, which at least other courts have concluded, you know, speaks to non-summons related service. And then also, even if we pierce that problem, is there reason to believe, is there evidence before us that any of these persons or entities resides, is found, or has an agent or transact business in any judicial district in the United States? Yes, your honor. And I'll address your last question first. We were invited to submit supplemental briefing on the issue of service of process in this case. The individual defendants, which are the only defendants in this case, there are no corporate RICO defendants, were actually served through their counsel on January 19th of 2019 through an agreement to waive service of process and continue on with the case. And then subsequently, the defendant's counsel filed a general notice of appearance in the case. And we would assert that being served in Miami through their counsel is being found in the United States. And, you know, subsequently we have found some support, not in the circuit, as to an attorney accepting service and that being deemed as is found in this jurisdiction. As well, under the Likudillo case, we would assert that the defendants, the individual defendants were on fair warning by directing their activities to the forum, which is the South border, where my client has its principal place of business in Fort Lauderdale. And I think, your honor, with respect to your first question, and forgive me, there were a couple of times that you were breaking up. I didn't want to interrupt you, but I believe you were referring to the split in the circuits relative to subsection D as opposed to subsection B of 1965, if I understand the question correctly. Yeah, that's basically it. I mean, I'm trying to read 1965 sort of holistically and make sense of all of it. And it just seems to me, as I read the statute, that A reads sort of to me like a venue provision, but, you know, might reasonably be understood as a venue provision that sort of doubles as a personal jurisdiction provision as to the principal initial defendant. And then B refers to like other parties brought into the case. And then D refers to sort of other non summons related process. That's the only way that I can sort of make the statute A, B, C, D all work together in a way that's coherent to me. We understand that argument, your honor. And there are six circuits out there that follow that reasoning of looking at 1965 as a whole, as opposed to this circuits. And I believe the there's one other circuit that follows this circuits, a reading of D as the jurisdictional provision. But I would assert your honor really would in this case, make no functional difference. If in fact, the defendants, the individual defendants accepted service of process, as well as the corporate defendants through their agent in Miami, through their lawyers in Miami, accepted service of process and therefore be deemed found here in. Understand this, I agree that we're bound to what BCCI said, and it looked at the D provision in 1965. Although I will confess that like Judge Newsome, when I read the rest of it, I'm not sure that that's right. But it doesn't matter what I think I'm bound by what we said in BCCI. And we said there that, and the rule says that process has to be served in any judicial district in which they were residing, or found having an agent or transacted their affairs. How could you serve process successfully in London? You're honored that that's an excellent question. In this case, I think it's a moot issue because the defense were not served, they were served through an acceptance of servants by their counsel. And in the same email agreed that not raise a service of process issue relative to the individual defendants. So, and, and, and you think they've waived that argument? Yeah, I believe that they waived that argument by accepting service of process the way that they did, Your Honor. And, and so and I'm, and I'm familiar with with the, the Black Seth case that discusses that, that the 1965 D does not extend to, to international service of process. And in this case, because they accept the service of process, we think that it's, that it's a moot issue also under the Likudillo case, because the activities of the racketeering activities were directed to plaintiff, that would also cover for jurisdiction, whether or not this were to read it, read 1965, A and B as being the jurisdictional pieces. We also asserted an interesting, interestingly enough, we've also asserted money laundering predicate acts in our, in our complaint. Let me just, there isn't a lot of time left. And I want to just move, move this discussion along about a different question, if I could focus you. Even if you get beyond 1965 D and our construction and purported waiver, there's a due process requirement as well for personal jurisdiction. You've got to show that the non-resident defendant has purposefully established minimum contacts with the forum and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. What minimum contacts to the individuals have here? Your honor, other than directing your activities, I mean, they were corporate directors of companies from, I'm talking about defendants, Jackson and Boerster were corporate directors of a, California corporation authorized to do business in Florida from 2016. And that company is now called fly Victor Inc. But I think that your honor, once we get past the, the colorable analysis, if the burden shifts to the defendant to, to establish that it's, this is, this would be one of the highly unusual cases that, that it would rise to the level of, of being violent due process. And the only arguments that the police make that I can glean from either their motion to dismiss or from their appellate briefs is simply that there's that, that they they're located in another jurisdiction. Presumably they're talking about travel and, you know, this court has held in the, Chase and Sanborn case that travel is so common and easy now that it's not going to rise to the level of a due process issue. And therefore, if the defendant and in their motion to dismiss and in their appellate papers did not raise the burden issue and it, and it's gotta be a heavy one, and it's gotta be gravely, I believe that this court, the language of this court is used. Then, then we don't even get into the, at this, the last part of the analysis, which would be the federal interest versus the defendant's interest in this, in this, in jurisdiction. Mr. Farrell, with respect to Fly Victor Inc, the defendants say it's not a party, it's an unrelated corporation. What, what is the relationship between Fly Victor Inc and Fly Victor? We, we only know that Fly Victor is the parent company that we don't, we don't know anything else other than at this stage of the pleadings. Inc is the parent company? Fly Victor Limited is the parent company. Let me ask you about the forum selection clause. Alternatively held, that the forum selection clauses in this case were mandatory and required dismissal of this action. There are two to look at. One is under the heading choice of law 13-1, and the second is under the heading law and jurisdiction 22.2. The language seems pretty clear. 13.1, this agreement and any disputes arising out of it, blah, blah, blah, shall be governed by and construed in accordance with English law, and the parties hereby submit to exclusive jurisdiction of the English courts. If there were any doubt about it, they had a second provision, law and jurisdiction, and it says 22.2, the courts of England shall have exclusive jurisdiction to adjudicate any dispute which arises out of or in connection with this participation agreement, provided that Victor shall be entitled to take proceedings related to this participation agreement in any other jurisdiction. You know what the district court held on that. Why was the district court wrong? Yes, Judge Martin. The choice of law and law and jurisdiction captions and the language that I just read. Respectfully, Your Honor, I would say that the district court was wrong for one important reason, that the plaintiffs specifically alleged in paragraphs 28 through 31, and more specifically in paragraph 29, that the specific clauses of venue and choice of law were inserted for the underlying intent to defraud the plaintiff, and this case, this then would fall under an analysis of Brennan, the United States Supreme Court in Brennan, and also in Rutger and in Lipkon, and in the Rutger case, this court specifically said that if the actual choice of law and venue provision is being challenged on the basis of fraud, that's sufficient, and Lipkon goes a little bit further by saying that it's not like we're saying that the entire contract should be void for fraud. If you're specifically focusing on those provisions of fraud, then it would rise to the level, especially at this stage, where there's been no 12b6 motion that was filed by the apologies, especially at this stage of the pleadings with the allegations being accepted as true. This case would present actually the first case that we were able to find, Your Honor, on this issue that actually included the specific languages of fraud as to the forum selection and the choice of law. We have not found one that has actually included it. We saw that there's a Krinkle case that's cited in the briefs and in the Rutger case, but in all of those cases, none of the... Let me ask you this. You negotiated at least some of the provisions of the RSA. Is there any reason identified why you could not have objected to the forum selection clause? This was an arm's-length agreement apparently between the parties on the face. I'm hard-pressed to see how any claim of fraud could lie with respect to these provisions when you negotiated and you made changes when you wanted to make changes, but there was nothing here with regard to these arm's-length negotiations between sophisticated entities that help you in any way as to this point. What am I missing? Your Honor, I believe you're referring to the declaration of Clive Jackson. It's not a notarized declaration, but he says in that declaration he doesn't deny that there was fraud. Let me ask you a question more specifically and more directly. The idea is that even whether those provisions were seen or not negotiated, that they were inserted by the defendants because they knew exactly what they were going to do, and paragraph 28 starts to get into this. They knew exactly what they were going to do before they did it, and they used this. They stuck this provision in, and we call it an in. Let's assume that they had the most nefarious motives. You guys signed it, and you knew how to make changes and did make changes for other things. Doesn't that utterly gut a claim of fraud with regard to these provisions? I respectfully don't think so, Your Honor, because we didn't know what their plan was before we executed the agreement, that there was never going to be payment of the remunerations, the substantial remunerations of bookings of air charters through the private jet website. There was no way to determine at the time of the signing of the contract that this contract provision was put in there for the purposes of fraud. Was there any ambiguity in the language that was actually used? Yes, Your Honor. We would assert that there's two causes, and then one of them goes a little bit further than the other, and that was section 13 that says that any and all claims rising out of this, especially in statute or in tort, will be exclusively resolved in the courts of England. I'm paraphrasing, of course. Paragraph 22 is where it becomes a more permissive provision, where Fly Victor has the discretion under the contract, seemingly, to sue my client in any jurisdiction wherever it so pleases. I think the language does say just that, but can't parties bargain in such a way that it's asymmetrical, that it's not reciprocal? Absolutely, and there's case law on point, and we would... They could do just what they did here. I guess what I'm just asking you to help me with is I have trouble finding any ambiguity in the language that the parties submit to the exclusive jurisdiction of the English courts, and more importantly, the courts of England shall, not may, it's mandatory, have exclusive jurisdiction to adjudicate any dispute arising out of or in connection with the participation agreement, provided that Victor shall be entitled to take proceedings in any other jurisdiction. Where's the ambiguity in that? It's asymmetrical, but the ability to sue in one jurisdiction, that's not something that we're contesting, and I understand what your honor's question is. It seems to me that this affidavit or the evidence that's presented with respect to the negotiations between the two parties and where the fraud was could be a motion for summary judgment one day, but at the pleading stage, again, this is the first case that we've been able to find that the allegations of fraud were specifically included into the complaint as reflected in the Bremen decision, that this would be a consideration, and that the evidence has not been fully fleshed out yet with respect to the inclusion of those clauses, and we would also assert that the individual defendants are non-signatories to the clause, to either clause. Thank you very much. Thank you, your honor. Thank you, Mr. Farrow. You are answering the court's question, so you may have your full four minutes reserved for rebuttal. Thank you, your honor. Mr. Thornton. May it please the court, Clay Thornton on behalf of Appalese. Just to begin, your honors, I'd like to provide some key facts that may assist in the analysis of this case. This action is premised on an alleged breach of contract that was brought by a disgruntled former business partner of the Appalese. The appellant, Don't Look Media, reached out to Appalese Fly Victor in United Kingdom in order to enter into an agreement regarding its website domain www.privatejets.com. The parties entered into, as the court correctly highlighted, equal foot negotiations regarding that revenue sharing agreement. Various terms were negotiated, one of them being the amounts of revenues that would be provided to the appellant. What was not negotiated and was agreed to by both parties were the form selection clauses. There were no complaints after entering into that contract of malfeasance by the appellant during the three-year term of that contract. Then, after the expiration of the contract and Appalese's refusal to renew that contract, the appellant brought suit against Fly Victor, two of its holding companies, and three of its executive board members, alleging federal RICO statute and various state law counts, including breach of contract. The appellants moved to dismiss for lack of personal jurisdiction and improper venue. Judge Singhal granted the Appalese's motion for four distinct reasons, all of which are valid in this case, but any one of which would support affirming the lower court's order. The district court, in granting Appalese's motion, properly performed the analysis that was articulated in Republic of Panama. The initial question that was presented for the court is whether the plaintiff can take advantage of the nationwide service of process statute at all. In doing so, the court is required to look at the allegations of the complaint. The district court correctly held that the appellant failed to assert a colorable claim and had not identified any predicate acts. As a preliminary matter, in order to allege a cause of action under fraud, Federal Rule Civil Procedure 9B requires the appellant to plead allegations with specificity. This requires that the appellant provide specific information regarding the documents or misrepresentations made, who, what, where, when, why these questions need to be answered and specifically pled as to each defendant. In this case, it's undisputed that the appellant had to plead the predicate acts of mail and wire fraud with specificity. But in this case, the appellant has also alleged money laundering. But when we get to the contents and whether or not the claims were colorable or detailed enough, I wanted to stop you and ask you a little bit more about the service of process issue. Whether it arises under D or under B, and our holding is clear in BCCI that it's D. The question I have is whether there was a waiver here. Your colleague says, if I hear him right, that might be a viable basis to dismiss for lack of service of process anywhere in any of the 93 judicial districts of the United States. But you agreed to process in a different way here. And therefore, you can't come back and reassert that process was no good here. Did you waive this? And if no, what in this record would support that? Sure. So to begin, I'd like to provide you some backgrounds as to how this actually went down, which is provided in our supplemental briefing. At the time, the appellant sought for the the appellees at that time explicitly advised via email that we would not be accepting service of process. The appellant then improperly served the appellees in London, England. They left the documents with a receptionist. And once that was received, we advised opposing counsel that we would not be contesting that improper service. But at no time did we ever service of process. What did it mean to say that you were not contesting? In other words, we would not be seeking to quash the improper service that was rendered. This was not done in accordance with the Hague Convention and therefore was not proper service on any defendant at all. We would not be contesting that improper service, but at no point where any of the appellees found in the United States. Aren't you contesting improper service now? Specifically, they were never served in any of the districts in the United States. It is not that we are arguing that there was improper service, but rather the plaintiff has failed to comply with the nationwide service of process, which explicitly provides that one of the appellees or defendants needs to reside, be found, have an agent or transact his affairs in the United States, none of which have been met in this case. Additionally, Your Honor, even if we did service of process, civil federal rule. Before you go to additionally, I just want to make sure I'm understanding. So they leave service with a receptionist in London. I guess first they asked you to waive and to accept. You say no. They then leave service of process with a receptionist in London. You then say we will not contest that service, that improper service in London, so that I assume is like a. That's like a rule 12 B5 issue. You know, an insufficient service of process, but your point is just to make sure I'm understanding before you go on to your backup argument is that that is not. Acceptance of service for personal jurisdiction purposes to get us sort of off of go. Correct, Your Honor. Also, at the time, the complaint was was provided. That complaint did not seek jurisdiction under 1965. Therefore, even if had we read it and seen the terms which did not include 1965, we couldn't have waived an argument that was not even raised before us at the time. The plaintiff only sought to amend after we filed a motion to dismiss the subject complaint is the amended complaint. And therefore, you didn't waive the argument you're making now and that the district court accepted. Correct, Your Honor. Also, to the extent that we would need to raise it, federal rules, civil procedure 4D5 provides that in accepting service, even if we had does not waive injection to personal jurisdiction, which we've raised in this case. So at no point should that be a consideration for the court. And then there is under if under Panama or BCCI, we're bound to look at D. Your point is that under D, like A, frankly, it requires the served upon party, the served party, either reside, be found, have an agent or transact his affairs at least somewhere in the US. And you're saying that that doesn't obtain here. Exactly correct. The only reason that we have brought before the court what the sister courts have decided, particularly in the Laurel Gardens LLC case versus McKenna, which was decided by the Third Circuit, that court analyzed all of the provisions and found that a should be the applicable provision for the initial defendant. And under a, it would require that that initial defendant, the case be at least filed in a jurisdiction in which there's minimum context as to at least one defendant. I understand that the court is bound and would be. I take it. Your answer is the circuit split on a point is a matter of no moment here anyway. Whether you be or you look at D, there was no service in the United States, period. And that renders the claim dismissible. Correct. Let me ask you something. Maybe it's too technical, but shouldn't this have been raised as a forum nonconvenience argument rather than a dismissal? A forum nonconvenience could be a separate argument that could be. But I thought that this kind of claim should have come up on the forum. Maybe I'm wrong about that. Well, in this case, as we've argued in our briefs, there's there's simply no actual personal jurisdiction under any of any of these provisions. The plaintiff himself had to comply with these in accordance with federal law and has not done so before. Nonconvenience would be for which there is none, but that there is a better venue in a foreign country. That argument is not what we're making here, but rather that there is simply no jurisdiction at all in the United States. If there are no other questions, I'd like to go back to some of the other issue of the forum selection clause that should have been brought in the forum nonconvenience motion. Is that right? Well, the forum selection clause, again, is a separate basis contractually as to why the court should dismiss this case and and and transfer it to the foreign court. The selection clause itself, as the court has correctly indicated, is unambiguous and explicitly provides that England has the exclusive jurisdiction for this case. Again, a forum nonconvenience would would exist regardless of what that contract were entered into. This would be a separate argument, which be improper venue rather than forum nonconvenience. I think where the question is being raised is when you're talking about enforcing the forum selection clause, we normally would look to 12B3 as the way to to do what the Supreme Court tells us as recently as 2013, that the appropriate way to enforce forum selection clause pointing to a state or a foreign forum is through the doctrine of forum nonconvenience. Your Honor, I would defer to the court as we have not briefed that issue and apologize. There's no question it was not addressed, but I was just simply raising it with regard really to the forum selection clause. We would simply state to the court that in this case, this would be a contractual issue rather than the appellees arguing that the other forum is better simply based on contact that exists there. Even if every single contact in this case were located in Florida, the case would still need to be transferred. And of course, DLM has not complained about this non-jurisdictional error. I don't mean to make too much of it, but tell me about their claim of fraud. They say that this was entered into by fraud and that when you go into the details, you're moving far beyond the motion to dismiss and you've moved into summary judgment territory. Sure. So to that point, as an initial matter, all forum selection clauses are presumptively valid and the plaintiff, not the defense, has the burden to establish otherwise. Therefore, when we have provided our motion, we needed not to point to anything else other than the contract itself. When the plaintiff then has the burden to establish that it was entered into by fraud under the case of Carnival Cruise Line versus Chute, which is a U.S. Supreme Court case of 1991, the plaintiff has the heavy burden of showing that that was entered into by fraud. The plaintiff cannot merely rely on the conclusions of law in their complaint that say that the entire contract itself was the product of fraud. He would need to show that the exact provision itself was the product of fraud. In this case, to rebut the plaintiff's assertion that it was somehow surreptitiously entered into the contract unbeknownst to the parties, even though they have redlined and negotiated that contract, we believe there is no basis whatsoever for the plaintiff to argue that this was entered into by fraud other than mere conclusions of law. If we agree with you that the forum selection clause is valid and enforceable, can we affirm the district court and dismiss the case on that ground without having to reach the personal jurisdiction issue? I believe the court can affirm the case on any one of the four points that were posited before the court under the district court's order. It can independently be dismissed based on the forum selection clause. It can independently be dismissed based on the plaintiff's inability to take advantage of nationwide service of process. It can independently be dismissed for him failing to meet the fifth amendment for due process. These are all various grounds, any one of which would support an affirmation of that order. What's your response to Mr. Farrar's argument about Flyvictor Inc. and the individual defendants related to that company? So opposing counsel or the appellant in this case has attempted to impute the connections of a non-party corporation that's based in California onto various defendants in this case. As a preliminary matter, the appellant is unable to do so based on the corporate shield doctrine that's provided for in the Bligzit versus De Silvestri case that can be found at 2013 Westlaw 12063940. That case essentially stands for the premise that the plaintiff cannot impute non-party corporate contacts onto individual defendants. It would have to be the contacts of these individuals explicitly, their own personal contacts. Their having worked for a corporation cannot be imputed onto them. Otherwise, any lawsuit against any major CEO would expose them to personal jurisdiction, almost any jurisdiction in the United States. Also, to the extent the plaintiff seeks to do so, he would need to make an alter ego argument or some sort of breach of the corporate shield, which wasn't alleged or raised before the court. And there's simply no evidence to indicate otherwise. Additionally, the appellant in this case has presented no evidence as to the actual connections of that company. It's merely been the argument of counsel with no supporting evidence on which the court could rely to show that this company has any connection with the United States. If there are no other questions, I see that my time is coming to an end here, but I'd like to just briefly point out that we believe the district court has correctly granted dismissal of this case for the various reasons and point out that the court also correctly held that the appellant in this case failed to plead with specificity any of the predicate acts. We were unable to go into the specifics of those, but we'd be glad to do so if there are any questions. Otherwise, we thank you for your time. Thank you, Mr. Thornton. What about Mr. Farrow? He's muted. I apologize, Your Honors. Am I still muted? No, we can hear you. Very good. I just want to call to the court's attention that the email that we received relative to the waiver of service of process had no conditions on it with respect to anything. As a matter of fact, it says that we could cancel any further efforts from our process servers as we will not be contesting service of process in our motions. In fact, they didn't contest service of process in the motions, and we would assert that that was a general waiver of service of process, and therefore, they accepted service of process through their agent in Miami. As far as we've been talking a bit about the evidence, well, there really is no evidence in this case right now. I mean, even the affidavit of the Declaration of Clive Jackson isn't evidence. It's not a sworn declaration in front of a notary, but there is no evidence. But if the defendant has submitted evidence, so has the plaintiff. The plaintiff submitted an affidavit in support of the denial of the motion for summary judgment where he specifically alleged, and I think it was in paragraphs 15 or 17, he specifically alleged that there was fraud in the non-negotiated portions of the foreign selection clause. And under the circumstances and the law of this circuit, when there's a conflict between the complaint on one end, the defendant's affidavit on another, and then the plaintiff's counter-affidavit, that this court is required to take all inferences with respect to the complaint in favor of the plaintiff. And because, again, we have specifically alleged that there was fraud, I mean, this would be something, again, going down the tracks in this case that could be handled on a separate type of motion. But right now at the what Brennan and Rutger were discussing and followed up by Litcon case, that once there's a specific allegation as to the clause itself, then that, at least at the pleading stage, would rise to a level of allowing this court to reverse the district court and remand with further instructions. Let me go back and ask a question about the service of process and the provisions of Rule 4E5 of the Federal Rules of Civil Procedure. I'll read it to you. It says, waiving service of a summons does not waive any objection to personal jurisdiction or to venue. As a matter of law, have they given up their right to contest personal jurisdiction or venue in this case by virtue of what they've done? I would say under the National Service of Process Statute 1965, that if a defendant is found in this jurisdiction, and again, there's no case law that we've been able to find in this circuit. We have found a case at the Middle District of Texas that discusses this, that when an attorney accepts service of process, then the defendant is found in the jurisdiction. Excuse me, panel. It looks like we lost Judge Newsome. No, I'm still here on audio. The computer quit on me, but I'm still here. Oh, okay. Okay. So what I was saying is that if we're going by nationwide service of process as the basis for jurisdiction, if the defendant is found in the jurisdiction, then you have personal jurisdiction. I'll answer your other question, Your Honor, with respect to waiver of service of process and then personal jurisdiction. I don't think that I can plausibly argue that necessarily that there's a waiver of personal jurisdiction. Although under the nationwide service of process, it does change that a bit because if the defendant is found, quote unquote, or through an agent is found in the jurisdiction, then there is personal jurisdiction under the nationwide service of process statute, which we have alleged in the complaint. I see that my time has expired, so if there's no other questions, I thank the court for its time. You've answered my question, and I thank you for it. And I thank the court for this time, and we respectfully request that this court reverse and remand the district court's granting of the motion to dismiss. And thank you again for your time. Thank you very much to both counsel for helping us. Thank you very much, Your Honor.